832

Briesen & Schrank, of New York City (George J. Harding, of Philadelphia, Pa., of counsel), for plaintiff.

Krisel & Lessall, of New York City (Theodore S. Kenyon and George M. Dowe, both of New York City, of counsel), for defendant.

ABRUZZO, District Judge.

The plaintiff, Wolf Brothers, is the owner of patent No. 1,649,760, dated November 15, 1927, issued to Matthew Vierengel, for an envelope machine. The plaintiff claims the defendant infringed specifically claims 33, 37, 39 and 40 of this patent.

The plaintiff asserts that the Vierengel patent discloses a combination of devices for performing various operations upon a traveling web of paper for the formation of a so-called carry or handle bag or envelope, as exemplified by the bag or envelope, plaintiff's exhibit No. 7.

The machine of the patent (Plaintiff's Exhibits Nos. 4–7) discloses a pair of feed rollers (44, 45) to which is led a web (35), from a roll of paper (34), and to which are periodically led strips of reinforcing material (154) cut from a web (69) led from a roll of reinforcing material.

At a certain point, areas of paste are applied to the traveling paper web at intervals and the re-inforcing strips are applied to the web in these areas and combined with the web by the feed rolls (44, 45).

The reinforced web then may be printed by passing through printing cylinders (79, 80) and then is operated on by so-called side cutters, comprising slitting rollers (86, 87) and cutting discs (100, 101). This operation provides the web with side seam flaps (109). At this point, the web appears as shown in Figure 18 of the patent (see, also, Plaintiff's Exhibit No. 4).

The traveling web then passes through a folding device (113) by which the seam flaps are folded over so that the web appears as in Figure 19 of the patent. The web then passes between rollers (115, 116), the roller 115 being provided with cutting and creasing devices (119, 120 and 121) which serve to crease the web for folding (120), and at the base of the closure flap (121), and to cut off blanks or bag lengths (156) from the web.

The rollers 115 and 116 operate to drive the web, which is retained on the roller (116) by the engagement of gripper fingers (131), at the leading edge (136) of the folded over seam flap, so that when it is severed to form the blank or bag length, the latter will be folded by the falling of the rear portion (158) of the blank upon the forward portion (156), which in the rotation of rollers (115, 116) before the web is cut is projected to and lies on table (160). For the folding operation the rear portion of the blank is freed from the web and from roller (116) by the movement of the levers (148).

The gripper fingers (131, Figure 10) extend from slide members (130) to overhang the edge of roller (116). The slide members of the grippers are mounted in yokes (132) carried by the roller (116). The slide members carry cam rollers (133) cooperating with fixed cams (134) by which,

against the action of springs (135), the gripper is operated to open to receive, and to close, to clamp the web between the fingers (131) and the surface of the roller (116).

On completion of the folding of the blank, the gripper finger opens to release the folded blank to delivery roller (161), grippers (163) operate to engage the folded edge of the blank and carry it between roller (161) and cooperating roller (162).

It is claimed that fingers (131) for engagement with the web, as roller (116) carries them up to the web, move upwardly, under the influence of cams (134), from beneath the web above it, flexing the edge of web as it passes from below to above it, and then moves downwardly under the influence of spring (135), upon the web to clamp the edge of the web to the surface of roller (116). The fingers (131), when folded blank is to be released to delivery rollers (161), are raised by the cams (134), the grippers (163) engage the folded leading edge of the blank, taking the blank in charge and causing it to flex free from the fingers (131).

So far as the patent specifically describes it, the fingers (131) are reciprocated, i. e., move radially of the axis of the roller (116). How far they extend over the edge of the web when they clamp the web to roller (116) is not stated by the patent. However, they act merely as clamps to hold the web to roller (116). The web is driven by the rollers (115, 116) and the fingers need only extend a slight distance over the web to hold it to the roller. The fingers (131) are slotted for adjustment, as shown in Figure 12, and adjusting screws are shown in Figure 11.

The disclosure of the Vierengel patent, with respect to gripper fingers (131), is addressed to those skilled in the particular art and contemplates intelligent adjustment of the machine for its efficient operation (Record, p. 78).

The folded blank is, by grippers (163), carried between the delivery rollers (161, 162), the grippers (163) release and the delivery rolls pass the folded blank to auxiliary feed rollers (174, 175), which in turn pass it on to feed rollers (177, 178).

The feed rollers (177) are mounted on a movable frame (180) adapted to be lifted to lift the rollers (177) out of action

and permit the envelope to stop when the blank has reached a position to be operated on by cutter (193) to form the handle opening (197, Figure 15) in the body of the blank, and by cutter (194) to form the locking tongue (201, Figure 15) in the flap. Both cutters are carried by a single head (190) adapted to be reciprocated.

To facilitate accurate positioning of the envelope beneath the cutters (193, 194), it being obvious that the blank on lifting of the feed rollers (177) would have some momentum, the frame (180) carriers a pivoted stop (191) in the way of the folded edge of the blank. An arm (182), carried on a suitably driven rocker arm and adapted to act against the flap end of the folded blank, coacts with stop (181) to bring the envelope up to stop (181) if it does not reach that stop when the feed rollers (177) are lifted.

When the punching operation is completed the rollers (177) are lowered and the completed envelope is moved on to the final delivery rollers (207). The stop (181), being pivoted, lifts and the advancing envelope passes beneath it, the stop then swinging back to normal position to position the following envelope for punching.

The claims numbered 33, 37, 39 and 40 of patent No. 1,649,760 (Plaintiff's Exhibit No. 1) read as follows:

"(33) In a machine for making envelopes and the like from a traveling web of material, devices for feeding the material, devices for forming an open edge envelope having a closure flap extending therefrom, and means for simultaneously forming a handle opening in the envelope and a device in the closure flap for cooperating with the handle opening to close the envelope."

"(37) In a machine for making envelopes and the like from a traveling web of material, means for feeding the material, means for feeding a strip of reinforcing material, devices for forming an envelope having an open edge with a closure flap and strips of reinforcing material on both inner surfaces of the envelope and the adjacent portion of the closure flap, and means for simultaneously forming a handle opening in the envelope material and the reinforcing strips and a device in the closure flap for cooperating with the handle opening to act as a closure for the envelope."

"(39) In a machine for making envelopes and the like from a traveling web of material, devices for feeding the material, means for forming an open edge envelope having a closure flap, and means for simultaneously forming a handle opening in the envelope material adjacent the open edge thereof and making a tongue in the closure flap for cooperating with the handle opening to form a closure for the envelope."

"(40) In a machine for making envelopes and the like from a traveling web of material, devices for feeding the material, devices for feeding a strip of reinforcing material, means for forming an envelope from the said materials having an open edge and a closure flap with strips of reinforcing material on the inner faces of both sides of the envelope and the adjacent inner face of the closure flap, and means for simultaneously punching an opening through the envelope and reinforcing strips adjacent the open edge thereof and forming a tongue in the closure flap to cooperate with the said handle opening thereby forming a closure for the envelope."

### Plaintiff's Contentions

Machines which embody the invention of the Vierengel patent have been for years in productive operation in the plaintiff's plant in Philadelphia. These machines in substance follow the teachings of the Vierengel patent.

The essence of the Vierengel invention of claims 33 and 39 lies in the complete machine comprising a combination of devices for making a bag or envelope of the carry type (plaintiff's exhibits 7 and 3A). The devices are so combined as to, specifically, first form an envelope or bag from a traveling web with complete folding operations, and second to cut the completely folded bag to form the handle opening and locking tongue simultaneously.

Plaintiff's contention is that claims 33, 37, 39 and 40 of the Vierengel patent teach a machine which is capable of producing a handle bag in only one way, by simultaneously forming a handle opening and locking tongue in a fully formed folded bag. Machines for forming the handle opening and locking tongue in other ways—as by making cuts in the web and then folding—are not within the claims and may be made or used by anyone.

Summarizing, the plaintiff, therefore, claims to be entitled only to a patent on a machine that simultaneously forms or cuts a handle opening and a locking tongue in a fully formed bag. A machine that would cut the handle opening first and later make the locking tongue, the plaintiff, concedes, would not come within the patent.

It is claimed that plaintiff's machine possesses the advantage in that the simultaneous formation of the handle opening and locking tongue after the bag is formed insures accuracy of register of the handle openings through the two walls of the bag and the reinforcing material, insures the tongue and opening will be in alignment and will be spaced so that in the end when the bag is closed the locking tongue will register accurately with the handle opening and its passage through the handle opening will not be restricted.

### Defendant's Machine

The defendant's machine is fully described in the stipulation and drawings introduced into evidence as plaintiff's exhibits Nos. 2 and 3. The product of defendant's machine is exemplified by the bag or envelope, plaintiff's exhibit 3A (stipulated).

While defendant's machine comprises means for feeding a web of paper and a web of reinforcing material which are combined somewhat differently from the plaintiff's, the defendant's machine forms a handle opening and has cutters for forming a locking tongue. This result is obtained in the defendant's machine by a rotary die while in the plaintiff's machine, the formation of the handle opening and locking tongue is done by a reciprocated die.

The plaintiff claims that the rotary die used by the defendant functions to produce the exact result as the reciprocated die.

The plaintiff claims to be entitled to a patent to that part of a machine which by simultaneous operation forms a handle opening and locking tongue in a fully formed folded bag. It is claimed that defendant's machine equivalently functions to do the same thing with a rotary die whereas the plaintiff uses a reciprocated die.

### Defenses of the Defendant

The defenses of the defendant are:

(1) That the patent is invalid because it involves no invention whatever over the prior art; that the claims are functional and broader than the invention; that they are for mere aggregations of familiar ele-

ments each operating in its familiar way without any new result; and that the disclosure of the patent is insufficient; and

(2) That the claims are not infringed because defendant's machine is neither the same nor equivalent in structure or operation and because it lacks elements to which the claims are restricted.

It is academic that in order for the plaintiff to be entitled to a decision upholding his patent, the device must be new and useful and must also be an invention or a discovery. It must reveal the flash of creative genius, not merely the skill of the calling. It is not enough to bring old tools into new combinations. To obtain the privilege of an invention more ingenuity must be involved than the work of a mechanic skilled in the art. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58.

There have been many prior patents on envelope or bag machines.

The Potdevin Patent No. 1,435,657 was granted in November 1922. It stated at page 1, 1s. 9–30;

"The object of this invention is to provide a paper bag having at its open end a foldable closure flap embodying carrying and locking means of simple, inexpensive and efficient construction.

"According to my invention I form in the front and back of the bag, adjacent the flap, suitable apertures in alinement with each other, and I form directly in the flap a tongue which is so positioned that when the flap is folded to close the bag, the tongue can be readily flexed through said apertures from one side of the bag and then folded on the reverse side of the bag in such a manner as not only to lock the flap in place but also to reinforce and strengthen the upper edge of the bag; the space produced by the formation and folding of the tongue being in register with the said apertures and affording therewith an efficient finger opening or 'handle' to facilitate the carrying of the bag."

The Bunker patent No. 1,507,156, granted in September 1924, shows a bag or envelope of the Potdevin type with an added reinforcing strip or backing.

The Armstrong patent No. 30,191, granted in 1860, shows a bag-making machine in which a web of paper is passed through a former and folded into a tube and cut into bag tube sections by a chopper striking the tube against a curved serrated lip knife and a straight serrated former knife to provide a serrated edge flap bag.

In 1892, the West patent No. 487,862 was granted which disclosed a machine for making paper bags with an additional mechanism for punching openings in the bags.

The Coty patent No. 1,119,244, granted in 1914, shows a bag-making machine, including a cutting device for making a slit through two thicknesses of the bag tube after it has been folded and while the tube is moving through the machine.

In 1915, the Funk patent No. 1,135,786 was granted revealing a mechanism for forming an envelope having a window opening and in addition shows a mechanism for applying a strip of material to the moving web, the strip in this case being transparent material overlying the window rather than reinforcing patches such as are applied in the Vierengel patent.

The Haines patent No. 1,410,404, granted in March 1922, shows a carry bag with handle openings in which reinforcing material is applied to both inner surfaces of the bag adjacent to the open edge thereof, and in which C-shaped slits for the handle opening and flap are punched simultaneously after the folding of the bag has been completed. The Haines patent provides (p. 2, 1s. 87–94):

"In manufacturing the bag according to the present invention, the blank sheets 5 (i. e., the reinforcing patches) are first applied to the blank bag body 1. After that has been done and the bag body is in collapsed or flattened condition, it may be placed in a punch and the alined slits 7 then punched through both sides 3 and 4 and the sheets 5 glued thereto in one operation."

The Stiriss patent No. 1,435,509, cited by the Patent Office Examiner in the File Wrapper, granted an invention for a machine for simultaneously punching an aperture and affixing a metal clasp element to a completed envelope.

It will thus be seen that plaintiff's machine does not contain a single item not taught by the prior art or set forth in other patents registered with the Patent Office.

The contention of the plaintiff is that there has been no machine which simul-

taneously achieved the two objects, to wit, cutting and locking, and that the machine in question was the first to obtain that result.

It is therefore indicated that the tools of the art were all available and well-known. These tools and combinations were taught in the Potdevin and Bunker patents. The Vierengel patent, upon which plaintiff relies, was filed immediately after the Potdevin and Bunker patents. This indicates to some extent that plaintiff designed a machine having the same devices as the Potdevin and Bunker patents but placed in a different combination. This required mechanical skill only.

The standard necessary to sustain a patent has been amply set forth in two leading decisions which are comparatively recent. In Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632, 636, the Court said:

"We cannot, moreover, ignore the fact that the Supreme Court, whose word is final, has for a decade or more shown an increasing disposition to raise the standard of originality necessary for a patent. In this we recognize 'a pronounced new doctrinal trend' which it is our 'duty, cautiously to be sure, to follow not to resist.' Perkins v. Endicott Johnson Corp., 2 Cir., 128 F.2d 208. We hold that the claims in suit are invalid for lack of invention."

In Kaufmann & Co. v. Leitman, 2 Cir., 131 F.2d 308, the Court observed:

"It is too plain for question that the Supreme Court now demands a more important contribution to the art than such slight changes. It is idle to invoke the earlier decisions; we should have to be blind to the most obvious truth not to accept the changed outlook. Perhaps indeed it is best never to try to define what one means by invention; perhaps it is best to leave it as a sort of intuitive apperception to be applied in each case. Be that as it may, we have no doubt that the slight modification which was alone necessary here will not support a patent at the present time."

The narrowness of the plaintiff's claims was indicated by the colloquy at the trial (pp. 129, 130, 131, 132 of the Record). At page 135 of the Record, it was said:

"The Court: What do you say now is your patent right?

"Mr. Harding: It is this: I claim that making these two holes at the same time, after the folding of the blank has been entirely completed, whether it be an end fold bag, like Vierengel, or a tubular bag such as the defendant's—that is all I claim."

In Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58, the claims in question were for improvements in lighters, commonly found in automobiles, for cigars, cigarettes and pipes. There were earlier lighters of the "reel type". The device unquestionably improved the lighters then in existence but the prior patents on file were instrumental in developing it. The function performed by the combination in the Cuno device was new and useful. However, the well-known thermostat was merely incorporated into the old "wireless" lighter to produce a more useful and convenient article. A new application of an old device may not be patented if the "result claimed as new is the same in character as the original result".

It is the duty of this Court to follow the reasoning and rulings set forth in the cases of Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632; and Kaufmann & Co. v. Leitman, 2 Cir., 131 F. 2d 308. Applying the principles enunciated by these decisions, it must, therefore, follow that the Court cannot sustain the plaintiff's patent. In view of this determination, it is unnecessary for the Court to consider the question of infringement or to review the defense as to whether or not the description of the patent was sufficient.

Submit findings of fact and conclusions of law in conformity with this opinion.