58 C.C.P.A. (Patents)

### Application of MAXWELL et al.
### Patent Appeal No. 5785.

United States Court of Customs and Patent Appeals.

Argued March 9, 1951.

Decided April 10, 1951.

Cameron, Kerkam & Sutton, Washington, D. C. (Ralph H. Hudson, Washington, D. C., and William P. Spielman, Stamford, Conn., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON and WORLEY, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner, hereinafter referred to as the examiner, of all the claims, eight in number, in appellants' application, serial No. 453,032, entitled "Manufacture of Cellulose Products of Improved Wet Strength."

The appealed claims are numbered 26 to 33, inclusive, and in the brief before us on behalf of appellants it is requested that the appeal be dismissed as to claim 33. That request will be granted.

The following descriptive matter is taken from the brief for appellants:

"The claims on appeal are directed to resin-bonded wet strength paper, i. e., to paper wherein the individual cellulosic fibers are bound together by a cured thermosetting resin so that the paper retains a large proportion of its mechanical strength when saturated with water.

Claims 26, 27 and 30–32 define a method wherein a cationic melamine-formaldehyde resin in the form of a colloidal solution is united chemically with the papermaking fibers while they are suspended in water. The treated fibers are then made into paper by the usual forming procedures and the resin is cured during the subsequent heating step that is always employed in paper mills to dry the paper. Claims 28 and 29 define the novel paper so obtained."

The Board of Appeals regarded claim 26 as illustrative of all the claims and held that if it be not allowable all the claims must fall, but in the brief for appellants it is said that claim 32 is the most specific of the appealed claims, and it is argued that the product claims 28 and 29 "define a new article of manufacture which is patentable independently of its method of manufacture."

We quote here claim 26:

"26. A method of making paper having both increased folding endurance and higher wet tensile strength as compared with paper of the same basis weight but containing no resin which comprises adding to a water suspension of cellulosic papermaking fibers a quantity of a colloidal solution of cationic melamine-formaldehyde resin such that an amount of said resin within the range of a few tenths of one per cent up to four per cent by weight is adsorbed by the cellulosic fibers, said colloidal solution of cationic melamine-formaldehyde resin having a glass electrode pH within the range of about 0.5 to 4.0 when measured at 15% solids and containing approximately 2 mols of combined formaldehyde for each mol of melamine and having visible blue haze indicating a stage of polymerization at which the particles are of a size that will react with said fibers, forming the treated fibers into paper and heating the paper to cure the resin adsorbed therein."

Claims 28 and 32 are reproduced hereinafter.

The application involved was filed July 31, 1942, and was under prosecution in the Patent Office for a long period of time, the final decision of the Board of Appeals not having been rendered until September 15, 1949. The history of its prosecution need not be recited in detail. First and last, various prior art references were cited by the examiner, ten being listed in his statement following the appeal to the board. The latter, however, under the view which it took of the case, in effect, overruled all the grounds of rejection advanced by the examiner, except one which was expressed in his statement after the appeal to the board as follows:

"Claims 26 to 33 inclusive stand rejected as unpatentable over the claims of Wohnsiedler et al. in view of Smith as set forth by the decision of the Board of Appeals (Paper No. 19) in considering similar claims then on appeal. While the instant claims recite the Wohnsiedler et al. resin in somewhat different terms than in the claims then under appeal, the process steps and the product are deemed at least substantially identical with the process steps and the product covered by the claims considered by the Board of Appeals."

The decision so referred to was rendered by the Board of Appeals August 11, 1947. Following that decision the appellants sought remand of the case to the Primary Examiner. The board denied the motion to remand, but upon petition to the Commissioner it was granted. So, this case was twice prosecuted to final rejection before the Primary Examiner and has been twice before the board upon appeals.

In view of the board's decision, the only references which require consideration here are the following patents: Wohnsiedler et al., 2,345,543, March 28, 1944; Smith, 2,343,095, February 29, 1944.

It appears that the Wohnsiedler et al. application was filed on the same day that the application of appellants was filed— that is, July 31, 1942—and it further appears that both applications were assigned to the American Cyanamid Company, the actual party in interest in the case. This situation obviously created a "stumbling" block for appellants' application.

The application for the Smith patent was filed August 3, 1940.

The patent of Wohnsiedler et al. embraces three claims, each of which is drawn to a composition of matter. For purposes of comparison we here quote in parallel columns claim 1 of the Wohnsiedler et al. patent and claims 28 and 32 involved in this appeal.

| Wohnsiedler et al. Claim 1. | Appealed Claim 28. | Appealed Claim 32. |
|---|---|---|
| "1. A colloidal aqueous solution of a partially polymerized, positively charged melamine-formaldehyde condensation product having a glass electrode pH value within the range of about 0.5 to about 3.5 when measured at 15 percent solids, said condensation product containing about 2–2.5 moles of combined formaldehyde for each mole of melamine and having a degree of polymerization less than that which characterizes gels and precipitates which are undespersible by agitation with water but sufficient to bring the particles thereof within the colloidal range, said condensation product having a definite positive electrical charge as shown by its migration toward the cathode upon electrophoresis of the solution." | "28. Paper composed of waterlaid cellulosic fibers bonded together by an amount of heat-cured melamine - formaldehyde resin within the range of a few tenths of one per cent up to four per cent of the dry weight of said fibers, said paper having both increased folding endurance and higher wet tensile strength as compared with paper of the same basis weight prepared from the same stock but containing no resin; said resin being present on the fibers in the condition obtained by adsorption from a dilute water suspension of the fibers of a colloidal aqueous solution of partially polymerized, positively charged melamine - formaldehyde condensation product having a glass electrode pH value within the range of about 0.5 to about 4.0 when measured at 15% solids and containing approximately 2 mols of combined formaldehyde for each mol of melamine and having a visible blue haze indicating a stage of polymerization at which the particles are of a size that will react with said fibers, and heat treatment to cure the melamine-formaldehyde resin." | "32. A method of making resin-bonded paper having increased folding endurance and greater wet strength as compared with paper of the same basis weight prepared from the same stock but containing no resin, said method comprising preparing a water suspension of cellulosic paper-making fibers, preparing a colloidal solution of partially polymerized cationic melamine-formaldehyde resin containing about 0.7 to 1.3 mols of hydrochloric acid and about 2 mols of combined formaldehyde for each mol of melamine and having a visible blue haze indicating the presence of colloidal particles large enough to react with said fibers, reacting the fibers of the paper stock suspension with the colloidal solution to release acid while irreversibly uniting de-acidified melamine-formaldehyde resin with the fibers, the quantity of solution used being sufficient to combine from a few tenths of one per cent up to four per cent by weight of de-acidified resin with the fibers, and then forming the combined resin-fibers into paper and drying the paper while simultaneously curing the resin." |

The claims of the Wohnsiedler et al. patent do not themselves state any use to which the patented composition of matter is applied, but in the specification it is said:

"We have discovered that aqueous solutions of the acid-type melamine-formaldehyde condensation products will undergo a progressive polymerization that is characterized by a gradual increase in the size of the resin particles until the colloidal range is reached. In this colloidal range we have discovered that the partially polymerized melamine-formaldehyde resin carries a definite positive electric charge, as is shown by its migration toward the cathode upon electrophoresis of the solution. This is an extremely important property in a solution of a heat-curable thermosetting resin, for it provides a ready method of obtaining a controlled deposition of the resin in extremely thin films on metallic surfaces and also on negatively charged materials such as cellulosic fibers. Thus, for example, a remarkable improvement in the wet strength of paper is obtained by adding the positively charged colloidal solutions of the present invention to well-beaten paper stock before it is formed into a finished sheet, as is described in detail in the copending application of Chester G. Landes and Charles S. Maxwell, Serial No. 453,032, filed July 31, 1942."

The application of Maxwell and Landes so referred to is the application here involved, and by making the comparison of claims invited, *supra,* it may be seen that the applicants had taken the vital element of the Wohnsiedler et al. claims—apparently the only element which rendered them patentable—and utilized it in claims limited to paper and a paper-making process. That element, as stated elsewhere in the specification of Wohnsiedler et al. is: "colloidal dispersions of cationic melamine-formaldehyde condensation products."

There are six claims in the Smith patent. All six are drawn to a process of finishing textile fibers which, as described in claim 1, is:

" * * * by exhausting thereon a highly dispersed polymerized vinyl compound from a dilute aqueous suspension of the same having a pH of from 4.0 to 7.5, the vinyl compound having been rendered substantive to the fiber by being dispersed in aqueous medium with a cationic surface active agent prior to dilution in the treating bath."

In the specification the "particularly" described resin dispersions are "of methacrylic acid esters or vinyl alcohol esters substantive to animal fibers, nylon and cellulosic fibers, the dispersions being prepared using a cationic surface active agent as emulsifying agent."

The Smith specification also states: " * * * This invention relates further to dispersions of mixed resins prepared by dissolving resinous materials in monomeric liquids capable of polymerization, emulsifying and polymerizing, the dispersions being prepared using a cationic surface active material as emulsifying agent."

In the Smith specification it is stated: "Compositions described in this invention are useful as sizes for general use on textiles and paper. The compositions produce slip resistance finishes on textiles and increase the wet strength of paper."

An example of its use in the paper-making art is given in the specification as follows:

### "Example 25

"(a) 2.5 parts of bleached sulfite pulp was placed in a beater in 90 parts of soft water and the bath was adjusted to a pH of 5.5. 0.025 part of the product of Example 19 was dispersed in 7.475 parts of water and added to the beater. The pulp, water and resinous dispersion were agitated 20 minutes at 70° F. The resulting mass was removed from the beater, filtered and the amount of dispersion not retained by the paper was determined by a turbidity method. More than 90% of the dispersion was exhausted from the bath. The wet strength of the paper was markedly increased.

"(b) The pH of the pulp (as in Example 19a) in water was adjusted to 7.0 and the run repeated. Similar results were obtained.

"(c) The pH of the pulp (as in Example 19a) in water was adjusted to 8.0 and the

run repeated. Similar results were obtained."

In the brief of the Solicitor for the Patent Office there is an analysis of claim 26, *supra,* which reads:

"Process claim 26 defines three procedural operations or steps, namely,

"(1) adding to a water suspension of cellulosic paper making fibers a quantity of a colloidal solution of cationic melamine-formaldehyde resin of specified pH and having a visual blue haze;

"(2) forming the treated fibers into paper; and

"(3) heating the paper to cure the resin adsorbed therein."

It was held, in effect, by the Board of Appeals that the steps in the appealed process claim, considered as steps only and without reference to the kind of resin employed, are presented in the Smith process.

To obtain the board's full view as to the applicability of the Wohnsiedler et al. patent, recourse must be had to its first decision rendered August 11, 1947, hereinbefore alluded to, where it is said *inter alia*:

"While the patent to Wohnsiedler et al. is not a proper reference against the present application for subject matter disclosed but not claimed therein, because the filing date of the patent is the same as the filing date of the present application, it is a proper reference against the present application for everything claimed therein for it is too well established to require the citation of authorities that a patent is a proper reference for everything claimed therein against an application belonging to the same assignee as the patent. * * *

"Wohnsiedler et al. disclose and claim a colloidal aqueous solution of a partially polymerized positively charged melamine-formaldehyde condensation product having a pH value within the range of about .5 to about 3.5%. In describing the properties of this composition, the patentees state:

" 'We have discovered that aqueous solutions of the acid-type melamine-formaldehyde condensation products will undergo a progressive polymerization that is characterized by a gradual increase in the size of the resin particles until the colloidal range is reached. In this colloidal range we have discovered that the partially polymerized melamine-formaldehyde resin carries a definite positive electric charge, as is shown by its migration toward the cathode upon electrophoresis of the solution. This is an extremely important property in a solution of a heat-curable thermosetting resin for it provides a ready method of obtaining a controlled deposition of the resin in extremely thin films on metallic surfaces and also on negatively charged materials such as cellulosic fibers.'

"Once Wohnsiedler et al. produced this resin and determined its properties, it became obvious in view of the state of the art, as outlined by the Examiner, to apply it to paper making. Any doubt with reference to this point is, in our opinion, dissipated by the fact that the application of this resin to the paper making art followed directly on the heels of its discovery. Wolf Bros. v. Equitable Paper Bag Company, 58 USPQ 307. The fact that the resin claimed in Wohnsiedler et al. produces a paper which is allegedly superior in wet strength to the paper produced by Smith is insufficient to render the substitution of material involved in the process under consideration inventive because, where it is obvious to make a certain substitution of materials, the fact that one material is superior to another in certain unobvious respects is insufficient basis for patentability. * * *"

After stating the contention of appellants to the effect that Wohnsiedler et al. did not assert that they discovered the deposition of the melamine resin colloid on cellulose fibers, but (evidently referring to the statement in the specification relative to the application of Maxwell and Landes quoted, supra) acknowledged the subject matter of the present application, the board continued:

"* * * This contention begs the question because the rejection is not based on the proposition that Wohnsiedler et al. actually applied resin to paper. It is based upon the proposition that once the resin is disclosed and its properties are ascertained, it becomes obvious to use it

in the paper manufacturing art. That Wohnsiedler et al. ascertained that the resin discovered by them forms aqueous solutions which undergo a progressive polymerization of the resin particles until the colloidal range is reached and that in this colloidal range the resin carries a definite positive electrical charge, can hardly be questioned in view of the clear statement to this effect in the patent. Once these properties are recognized, it becomes obvious that the resin may be used for the treatment of cellulosic fibers."

In its decision of August 2, 1949, the board said in addition: "Wohnsiedler et al. claim the resin substantially in the same terms used by appellants to define the resin used[,] except as to the 'blue haze' condition of the colloidal resin solution. This feature appears to be inherent in the pH range and ratio of HCl to melamine claimed by Wohnsiedler et al., as will be apparent from Wohnsiedler et al.'s drawing, the table on page 2, and the description of Example 2 of Wohnsiedler et al."

The Smith patent seems to have been relied upon in a response to an argument for appellants to the effect that appellants had discovered a new chemical reaction whereby new results were obtained. After pointing out that the paper-making steps of the claims were shown in an example (No. 25, *supra*) of the Smith patent the board declared: " * * * we fail to see how such a reaction can confer patentability on the claims, especially where the reaction is inherent in the operation of the Smith process with Wohnsiedler et al.'s resin solution."

There is no claim that appellants discovered the paper-making steps as steps in their claims prior to Smith's filing date, but there is a claim to the effect that their discovery "of the capabilities of the resin solution" described in the claims antedated its discovery by Wohnsiedler et al.

Stated in a different way, it is contended that two distinct inventions were made —one by Wohnsiedler et al. and one by Maxwell and Landes, the one by Wohnsiedler et al. being "the resin colloid itself" and the one by Maxwell and Landes being the discovery of "the chemical reaction between the cellulose and melamine-formaldehyde acid colloid." The contention is stated in the brief for appellants as follows (page references and line numbers being deleted):

"From the facts as set forth in the preceding section, [wherein affidavits of Maxwell and Landes and Wohnsiedler and Thomas are paraphrased] it was clear that two inventions were made, either one of which was patentable alone. The correctness of this conclusion can hardly be denied, because (1) the Patent Office has granted the Wohnsiedler et al. patent, and because (2) the Board of Appeals has reversed all rejections on prior art of appellants' claims on appeal.

"Furthermore, these two inventions were invented by different inventors. Wohnsiedler and Thomas certainly did *not* invent the chemical reaction between the cellulose and melamine-formaldehyde acid colloid that forms the basis of appellants' invention, for they knew nothing about it until they were informed of the results obtained by Landes and Maxwell. Therefore the true inventors of the present process were necessarily Maxwell and Landes. [Italics quoted.]

"On the other hand Wohnsiedler and Thomas were the *only* persons who could be named as the inventors of the resin colloid itself. It was they who prepared the initial clear acid resin solutions without any participation by or assistance from Maxwell and Landes; this solution was transformed into the new resin colloid *solely by the passage of time.* After learning of the results obtained by Maxwell and Landes, it was Wohnsiedler and Thomas who recognized the positive electrical charge on the resin particles and determined the limits of acidity under which the cationic resin colloid would form. And finally, it was Wohnsiedler and Thomas who recognized in their new colloid *a resin solution of general utility* which was later to prove extremely valuable for a number of purposes other than the manufacture of paper; see the Landes affidavit of April 29, 1948, and the attached copies

of U. S. patents that have issued on some of these uses. [Italics quoted.]

"Under these circumstances no other course was open to appellants' assignee than that which was followed, i. e., the filing of two separate patent applications on the same day."

The immediately foregoing quotation comprehends the fundamental position taken by those representing the party in interest here relative to the Wohnsiedler et al. patent, and in this opinion we shall not endeavor to recite in detail the various arguments, some of which are quite abstruse, advanced in support of that position.

Upon the record presented, we agree with the statement that "Wohnsiedler and Thomas were the *only* [italics quoted] persons who could be named as the inventors of the resin colloid itself."

We also agree with the statement that "Wohnsiedler and Thomas certainly did *not* [italics quoted] invent the chemical reaction between the cellulose and melamine-formaldehyde acid colloid," which is stated to form "the basis of appellants' invention," but it must be added that neither did appellants "invent" it. The chemical reaction obviously was inherent.

It is not intended to "play upon words." Probably the word "invent" was used in the brief as having the meaning of the word "discovered." If so, that, in our opinion, would not affect the question of patentability here, because the discovery alleged to have been made by appellants was that of the effect produced not by any acts of appellants, but *solely by the passage of time.*" (Italics quoted.)

We find ourselves somewhat confused by the phrase "*new* [italics ours] resin colloid" used in the last quoted paragraph. Invention of the "resin colloid itself" used in the process of appellants was claimed by and accredited to Wohnsiedler and Thomas, because they "prepared the initial clear acid resin solutions without any participation by or assistance from Maxwell and Landes." When, therefore, it is asserted that the solution was transformed into a "new resin," the assertion tends to confuse. Surely appellants Maxwell and Landes neither invented nor discovered a "new resin." Whatever changes may have taken place in the solution invented by Wohnsiedler and Thomas as a result of the "passage of time" obviously was due to to that factor and not to any thought or act on the part of Maxwell and Landes.

So, any contention that appellants invented a new resin colloid obviously is wrong.

However, we are of opinion that appellants properly may be credited with invention over the Wohnsiedler et al. patent, because of their utilization of the resin colloid of that patent in the making of paper. The resin product was new. Neither it nor its equivalent had ever been used in the making of paper or any other product until Maxwell and Landes tested and used it. The steps of the process as steps only, we agree, probably are present in the Smith patent, but, under the facts here appearing, it seems to us that the product used in carrying out the process should be given weight.

Samples of the resin colloid, invention of which was accredited to Wohnsiedler and Thomas, were delivered to Maxwell and Landes and tested by them in the manufacture of paper. As best we can determine from the record, the tests were made after there had been a "passage of time," and a greatly improved quality of paper in the particulars recited in the claims resulted.

In view of our conclusion, separate discussion of the product claims is unnecessary.

The appeal is dismissed as to claim 33, and the decision of the board as to claims 26 to 32, inclusive, is reversed.

Reversed.